Argued and submitted September 3, judgment vacated,
appeals dismissed November 17, reconsideration denied December 17, 1980,
petition for review denied March 4, 1981 (290 Or 551)

DIRECTOR et al,
*Appellants,*
*v.*
SOUTH CAROLINA INSURANCE
COMPANY et al,
*Respondents.*

DIRECTOR et al,
*Respondents - Cross-Appellants,*
*v.*
SOUTH CAROLINA INSURANCE
COMPANY et al,
*Appellants - Cross-Respondents.*

(No. A 7711 15861, CA 15215)

619 P2d 649

David P. Templeton, Portland, argued the cause for appellants and respondents-cross-appellants. With him on the briefs was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondents and appellants-cross-respondents. With him on the briefs were Douglas G. Houser, Robert F. Riede, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Richardson, Presiding Judge, and Thornton and Joseph, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

Plaintiffs are the owner and representatives of a deceased co-owner of the Hughes Building in Portland, which was destroyed by fire in February, 1977, and which was insured against fire loss by defendants. After plaintiffs filed their claims, the parties failed to reach agreement concerning the actual cash value of the building or the amount of plaintiffs' loss. Defendants demanded that the disagreements be resolved through the appraisal procedure established by ORS 743.648 and the insurance policies. Before the appraisal process was initiated, however, plaintiffs brought this declaratory judgment action, seeking a determination of the meaning, application or validity of various policy provisions which are relevant to fixing the amount of loss.[1] Three appeals and a cross-appeal from the judgment and orders of the trial court are before us.

The threshhold and dispositive question is whether the trial court erred by reaching the merits of the action before an appraisal had taken place. We hold that completion of the statutory appraisal process was a condition precedent to plaintiffs' right to bring the action, and we therefore vacate the judgment and dismiss the appeals.

As required by ORS 743.609, the defendants' policies insure the building "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property * * *."[2] The policies contain appraisal clauses as required by ORS 743.648. That statute provides:

"A fire insurance policy shall contain a provision as follows: 'In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.

---

[1] In their last amended complaint, plaintiffs did not seek judgment for the unpaid amount of the loss claimed by them. However, they had sought that relief in earlier pleadings.

[2] The coverage is also subject to policy limits, but, as far as we can ascertain, defendants do not contend that the prorated amount of loss claimed by plaintiffs exceeds the limits of the policies.

The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.'"

The policies further provide, as ORS 743.660 requires, that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable * * * unless all the requirements of this policy shall have been complied with * * *."

Plaintiffs ascribed an actual cash value to the building which was approximately three times and a million dollars more than defendants' computation of the actual cash value. The difference in the parties' computations of the amount plaintiffs were entitled to recover on the policies was even greater. According to plaintiffs (and defendants do not appear to disagree), these differences were attributable to disagreements between the parties over the meaning of "actual cash value," the meaning and application of the "cost to repair" provisions of the policies, and the applicability and/or validity of the coinsurance clauses.

Rather than proceeding to appraisal, as demanded by defendants, plaintiffs brought this action to obtain declarations concerning the three disputed policy provisions. At various stages of the proceedings and in various ways, defendants asserted that the action could not be adjudicated until the statutory and contractual appraisal requirement was satisfied.[3] The trial court rejected defendants'. contention.

---

[3] The procedures through which defendants made this assertion were (1) a plea in abatement; (2) a demurrer; (3) a motion for judgment on the pleadings; and (4) a motion for judgment notwithstanding the verdict.

After trial, the court concluded as a matter of law that the "cost to repair" provision of the policies was to be applied in essentially the manner plaintiffs advocated. The court submitted the question of the meaning of "actual cash value" to a jury, which found, as plaintiffs had argued, that the term means "[t]he replacement cost less physical depreciation only." The court ruled adversely to plaintiffs on one of their arguments relating to the coinsurance clauses and did not reach the remaining arguments regarding those clauses because of its conclusion that "there presently is no immediate justiciable controversy as to the validity or applicability of the coinsurance or average clause." Defendants appeal from the portions of the judgment relating to "actual cash value" and the "cost to repair" provisions; plaintiffs cross-appeal from the trial court's rulings concerning the coinsurance clauses. The parties refer to defendants' appeal and plaintiffs' cross-appeal, collectively, as the "first appeal."

After the judgment was entered, plaintiffs demanded an appraisal. Defendants' motions to stay the appraisal process while the appeal was pending were denied by the trial court and this court. Plaintiffs then petitioned the trial court for supplemental relief, requesting an instruction to the appraisers that certain evidence, which plaintiffs regard as inconsistent with the judgment, should not be considered in the appraisal proceeding. The trial judge denied the relief, apparently on the ground that he had no jurisdiction to grant it in light of the pending appeal. *See* ORS 19.033. Plaintiffs' second appeal is from that order denying supplemental relief.

The third—and, to date, last—appeal in this proceeding was taken by plaintiffs from the trial court's refusal to grant a second petition for supplemental relief made by plaintiffs after the appraisers had made their award. In essence, plaintiffs petitioned to have the appraisal award of $500,000 declared invalid and to have judgment entered in their favor for the substantially greater amount they consider to be required by the combination of the trial court's judgment, the law on the issues not reached or wrongly decided by the trial court, and the evidence *properly* before the appraisers.

As noted above, defendants' arguments to the effect that this controversy cannot be judicially decided at this time assume a variety of forms, or at least a variety of labels. Although the labels defendants use include "jurisdiction," "justiciable controversy" and "ripeness," it does not appear that defendants seriously contend that the controversy would not be in an adjudicable posture absent the statutory and contractual provisions regarding appraisal and limitations on actions. The issue is whether those provisions barred plaintiffs from seeking the relief they attempted to obtain in this action.

The Oregon Supreme Court and this court have held that "an appraisal agreement, if expressly or by implication made a condition precedent to action on the contract, could be a defense to such an action * * *." *Shepard & Morse Lbr. Co. v. Collins,* 198 Or 290, 297, 256 P2d 500 (1953); *Budget Rent-a-Car v. Todd Investment Co.,* 43 Or App 519, 603 P2d 1199 (1979). However, plaintiffs argue here, on a number of grounds, that the policy provisions relating to appraisal and limitations on actions (which are mandated by ORS 743.648 and 743.660, respectively) do not create a condition precedent or—by whatever name—a bar to this action. Two of plaintiffs' arguments require comment.

They contend first that ORS 743.660, which refers to the bringing of a "suit or action on this policy *for the recovery of any claim"*(emphasis added), makes compliance with policy requirements a prerequisite only to actions to recover money judgments and does not bar declaratory judgment actions to construe policy provisions. Plaintiffs rely on *McGraw v. Gwinner,* 282 Or 393, 578 P2d 1250 (1978), and earlier cases of similar import. In *Gwinner,* the court held that an insured who established in a declaratory judgment action that the insurer had a duty to defend and to indemnify, but who did not recover a money judgment in the action, was not entitled to attorney's fees under ORS 743.114.[4] Plaintiffs argue that the issue decided in

[4] ORS 743.114 provides:

"If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the *plaintiff's recovery* exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." (Emphasis added.)

*Gwinner* is analogous to the issue of whether ORS 743.660 bars actions in which no monetary recovery is sought.

We find plaintiffs' analogy and their argument unconvincing. The argument presupposes that the language of ORS 743.660, without reference to ORS 743.648, determines whether an appraisal under the latter statute was a condition precedent to this action. Plaintiffs' interpretation of ORS 743.660 would make ORS 743.648 a nullity. As plaintiffs construe it, ORS 743.660, would permit a party to bring a declaratory judgment action prior to an appraisal to establish the very facts—the dollar amounts of actual cash value and loss—the appraisers are to decide under ORS 743.648, as long as damages for those amounts are not sought in the action.[5]

■■ The presumptive purpose of ORS 743.648, like other appraisal and arbitration statutes, is to create a method of resolving disputes which avoids the delay and expense of litigation. *Cf., Brewer v. Allstate Insurance Co.,* 248 Or 558, 562, 436 P2d 547 (1968). Plaintiffs *now appear* to concede that ORS 743.648 and 743.660 would prohibit them from bringing an action to recover damages for their loss in advance of the appraisal demanded by defendants, *See* 49 Or App at 179, n 1, *supra.* We agree that an appraisal cannot be circumvented or delayed by taking that *ultimate* question to the courts; in our view, the purposes of the statutory and contractual appraisal provisions would be even more seriously frustrated by permitting an appraisal to be delayed and litigation costs to be incurred while non-dispositive questions relevant to determining the amount of loss are adjudicated. The procedural history of this case aptly illustrates how plaintiffs' interpretation of ORS 743.660 if adopted by us, would subvert the appraisal requirement of ORS 743.648. We reject that interpretation.

■ Plaintiffs argue next that the appraisal demanded by defendants would have been "pointless" unless preceded by a judicial interpretation of the statutory and contractual language which govern the appraisers' action and about

---

[5] Through their second petition for supplemental relief, plaintiffs *did* seek damages, and they are appealing from the trial court's denial of that petition.

which the parties disagree. Plaintiffs cite three cases from other jurisdictions for the proposition that contractual language can properly be construed by courts before factual issues involving the application of the language are submitted to arbitration or appraisal in accordance with the contracts. Plaintiffs' cases are far less apposite than *Sullivan v. Liberty Mutual Fire Ins. Co.*, 174 Conn 229, 384 A2d 384 (1978), cited by defendants, in which the Connecticut Supreme Court interpreted a statute functionally identical to ORS 743.648.[6]

The insured in *Sullivan* applied to the trial court to appoint an umpire, after the appraisers designated by the parties failed to reach agreement because they disagreed about the meaning of "actual cash value." As explained in the Supreme Court's opinion, the trial court rejected the application for reasons similar or identical to those plaintiffs now espouse:

> "The trial court, after hearing, denied the plaintiffs' application, concluding that the proper test to be applied in determining actual cash value, which is not defined in the statute or in the insurance policy, is one of law for a court and not one of fact for the appraisers or even an umpire. Otherwise, the court reasoned, if the parties were compelled to proceed with an appraisal without having actual cash value defined there would be a possibility of error by the appraisers which could impede the expeditious settlement of the claim. * * *." 174 Conn at 231.

The Supreme Court reversed, stating:

> "* * * In this case the appraisers were unable to agree upon a test or standard to be applied and consequently were unable to agree upon an umpire. To resolve such disagreements is the purpose of the provision in § 38-98 for court appointment of a competent and disinterested umpire upon the request of the insured or the insurer. The mere possibility that the umpire or appraisers might commit errors of law or fact was not a proper ground for the court to deny the plaintiffs' application.
>
> "An insured is entitled to have a loss determined by the appraisal procedure required by statute and the terms of the insurance policy. * * *" 174 Conn at 232-33.

---

[6] We therefore need not comment on whether we are impressed with the proposition for which plaintiffs cite the cases.

We conclude that ORS 743.648, ORS 743.660, and the policy provisions which incorporate the language of those statutes required plaintiffs to proceed with the appraisal demanded by defendants before bringing this action.

We are aware that this controversy has reached a stage at which a decision on many of the substantive issues is possible, and that such a decision might avoid or reduce delay in the resolution of *this* dispute and avoid or reduce the expense of further litigation to *these* parties. However, we cannot reach those issues without disregarding the plain meaning of statutes which are intended to avoid or reduce delay and expense for *all* parties to such controversies. It follows that the trial court erred by rejecting defendants' contention that the action was premature.

Judgment vacated; appeals dismissed.