Argued and submitted November 8, 1982, reversed and remanded with instructions
March 23, Schnitzer's reconsideration denied April 29, South Carolina Insurance
Company's reconsideration denied May 13, appeal dismissed June 28, 1983
(295 Or 259)

# SCHNITZER et al,
*Appellants,*

*v.*

# SOUTH CAROLINA INSURANCE COMPANY et al,
*Respondents.*

## (A8103-01863; CA A24422)

661 P2d 550

David P. Templeton, Portland, argued the cause for appellants. With him on the briefs was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondents. With him on the brief were Douglas G. Houser, Robert F. Riede, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Joseph, Chief Judge, and Warden and Van Hoomissen, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

This is the second appeal in this case. In February, 1977, the Hughes Building in Portland, owned by plaintiffs and insured against fire loss by defendants, was destroyed by fire. The parties disagreed about the actual cash value of the building and the amount of plaintiffs' loss. Defendants demanded that the disagreements be resolved through the appraisal procedure required by ORS 743.648 and the insurance policies. Plaintiffs sought and obtained a declaratory judgment during the pendency of the appraisal.

In our previous opinion, *Director v. So. Carolina Ins.,* 49 Or App 179, 619 P2d 649 (1980), *rev den* 290 Or 551 (1981), we held that the insureds could not bring a declaratory judgment action to determine the meaning, application or validity of various fire insurance policy provisions before the appraisal process. We vacated the judgment and dismissed the appeals.[1] On this appeal, taken from a judgment in an action filed after the appraisal process was completed, the insureds raise the issues not reached in the earlier appeals.

In their first count, plaintiffs alleged that they are entitled to recover $1,290,000 for the cost of repairs, rather than $500,000, which was the appraisers' determination of the actual cash value of the building. Defendants moved to strike that count on the ground that it failed to state a claim for relief, and the motion was granted. Plaintiffs then filed an amended complaint in which they sought only to recover fire debris removal expense and also the difference between the appraisal award of $500,000 and $339,244, the amount already paid by defendants. Both parties moved for summary judgment. The trial court granted defendants' motion and dismissed plaintiffs' action.

In their first assignment, plaintiffs argue that the trial court erred in striking the first count in the original complaint. They claim that the appraisers' determination that "actual cash value" of the building was $500,000 was

---

[1] There were three appeals and a cross-appeal from the declaratory judgment and related orders of the trial court. We were not required to and did not decide whether plaintiffs could bring an action to challenge the appraisal award.

erroneously based on market value rather than on replacement cost less physical depreciation.[2] They maintain, relying on the latter formula, that actual cash value was $1,392,935. The import of using replacement cost less physical depreciation rather than market value to determine actual cash value is that, under the insurance policies, plaintiffs are entitled to recover the amount of insurance, the actual cash value of the building or the cost of repairs, *whichever is less.* Using the standard plaintiffs urge, they would be entitled to $1,290,000, the cost of repairs. If actual cash value as determined by the appraisers is used, plaintiffs would be entitled only to $500,000 (less any applicable deductible or co-insurance allocation).

■     Plaintiffs argue that the appraisers made an error of law in using market value to determine actual cash value. Be that as it may,[3] an Oregon appraisal award is not subject to attack merely for errors of law or fact. ORS 743.648 provides:

> "A fire insurance policy shall contain a provision as follows: 'In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such an umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual

---

[2] It is not clear from the record that the appraisers' award was based on market value. To be sure, the record does not disclose that any specific formula or definition was used. Plaintiffs' claim is apparently based on the fact that, at the appraisal hearing, one witness testified that the market value of the building was $485,000.

[3] *Jefferson Insurance Co of NY v. Superior Court,* 3 Cal 3d 398, 475 P2d 880, 90 Cal Rptr 608 (1970), cited by plaintiffs in support of their claim that the award is reviewable, does in fact support that claim, but it also stands for the proposition, contrary to plaintiffs' position, that "actual cash value" means fair market value.

cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.' "

■ The clear purpose of the statute is to subject disagreements about "actual cash value" and "amount of loss" — including the method for determining the value — to disinterested appraisers and an umpire for resolution. As we said in our earlier opinion in this case:

"The presumptive purpose of ORS 743.648, like other appraisal and arbitration statutes, is to create a method of resolving disputes which avoids the delay and expense of litigation." 49 Or App at 185.[4]

In the absence of a claim of fraud or misconduct by the appraisers, an appraisal award is not reviewable. *See Lincoln Const. v. Thomas J. Parker & Assoc.,* 289 Or 687, 617 P2d 606 (1980); *Stemmer v. Scottish Insurance Company,* 33 Or 65, 49 P 588, 52 P 498 (1898); *see also Schreiber v. Pacific Coast Fire Ins. Co.,* 195 Md 639, 75 A2d 108 (1950).[5]

In their second assignment, plaintiffs contend that defendants' motion for summary judgment should not have been granted. Plaintiffs sought to recover $230,756 in addition to the $339,244 previously paid by defendants. They argue that, even if the appraisal determination of actual cash value is binding on them, the policies' co-insurance clause limitations were inapplicable and also that the

---

[4] The roles of arbitrator and appraiser can be distinguished:

"Generally, * * * appraisers act independently and apply their own skill and knowledge in reaching their conclusions. Arbitrators, on the other hand, must meet together at hearings, take evidence, adjudge matters based only on what is presented to them in the course of adversary proceedings, determine ultimate liability, and otherwise act quasi-judicially." *Budget Rent-A-Car v. Todd Investment Co.,* 43 Or App 519, 523, 603 P2d 1199 (1979).

ORS 743.648 not only authorizes the appraisers to make a factual determination as to actual cash value and amount of loss but also authorizes them to make an award. Our scope of review under the statute is analogous to review of an arbitration award. *See e.g., Brewer v. Allstate,* 248 Or 558, 436 P2d 547 (1968); *Eugene Educ. Assoc. v. Eugene School Dist 4J,* 58 Or App 140, 648 P2d 60 (1982).

[5] Moreover, to hold that there is only one standard for determining actual cash value would be contrary to Oregon law. Because the purpose of fire insurance is to indemnify — that is, to award compensation for loss without enrichment, there can be no universal test for determining the value of property injured or destroyed. *Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 334 P2d 186 (1959). It is for the appraisers and the umpire, under the facts of each case, to determine the appropriate indemnification when the parties cannot agree.

appraisal award did not include debris removal expense, which plaintiffs say is separately recoverable.

Defendants sold plaintiffs two blanket insurance policies insuring five buildings (including the Hughes Building) for a total of $2,136,000. Both policies contain this provision:

"AVERAGE CLAUSE (THIS CLAUSE VOID UNLESS PERCENTAGE IS INSERTED ON THE FIRST PAGE OF THIS POLICY). (The term 'Co-Insurance Clause' wherever used in this policy shall be deemed to mean 'Average Clause'): IN EVENT OF LOSS TO PROPERTY DESCRIBED IN ANY ITEM OF THIS POLICY AS TO WHICH ITEM A PERCENTAGE FIGURE IS INSERTED ON THE FIRST PAGE OF THIS POLICY, THIS COMPANY SHALL BE LIABLE FOR NO GREATER PROPORTION OF SUCH LOSS THAN THE AMOUNT OF INSURANCE SPECIFIED IN SUCH ITEM BEARS TO THE PERCENTAGE SPECIFIED ON THE FIRST PAGE OF THIS POLICY ON THE ACTUAL CASH VALUE OF THE PROPERTY DESCRIBED IN SUCH ITEM AT THE TIME OF LOSS, NOR FOR MORE THAN THE PROPORTION WHICH THE AMOUNT OF INSURANCE SPECIFIED IN SUCH ITEM BEARS TO THE TOTAL INSURANCE ON THE PROPERTY DESCRIBED IN SUCH ITEM AT THE TIME OF LOSS."

The percentage figure in both contracts is 90 percent.

Plaintiffs contend that, of the total insurance, $574,209 (the "actual cash value" declared by them when the policies were purchased) is attributable to the Hughes Building and that, because the actual cash value of the building as determined by the appraisers was $500,000, the building was insured for more than 90 percent of its value. Thus, they claim, the co-insurance clause[6] requirements are met, and so they are entitled to a minimum of $161,000,

---

[6] Although the clause is designated an "average clause," it actually serves (by its terms) as a co-insurance clause, which imposes an obligation on the insured to keep property insured for a specific amount or a specific percentage of actual cash value. To the extent that the insurance is insufficient, the insured becomes a co-insurer with the carrier. A true average clause apportions blanket insurance among several buildings so that the amount of insurance coverage on each building is that proportion of the total amount of insurance which the building's value bears to the value of all of the buildings. *Couch on Insurance 2d* §§ 37:1375, 54:86 (1966).

representing the difference between the amount of insurance company payments and the award of $500,000. They say that, because they valued the Hughes Building at $574,209 on their insurance application, that amount of the total insurance is attributable to the building.

However, the policies are *blanket* policies — that is, the total amount of insurance in force could be applied to indemnify plaintiffs for loss to any one of the buildings insured, within the limits of the policies.[7] The fact that plaintiffs sought to recover $1,290,000 for a building they had themselves valued for insurance at $574,209 is inconsistent with this view of the contracts and undercuts their claim that the insurance was attributable in discrete portions to the individual buildings.

■ Because the policies are blanket policies, the co-insurance clause required plaintiffs to maintain insurance on all five buildings at not less than 90 percent of their *actual cash value* as determined at the time of loss. The appraisers determined the total value of the buildings to be $3,887,499;[8] the amount of insurance was $2,136,000. Plaintiffs having failed to insure the buildings for 90 percent of their value, the co-insurance clause applies, and defendants' liability is approximately $305,000.[9] They have actually paid more than that.

■ Plaintiffs next argue that the co-insurance clause is invalid, because it does not comply with ORS 743.669(1):

> "Any provision restricting or abridging the rights of the insured under the policy must be preceded by a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters."

---

[7] A blanket fire insurance policy attaches to and covers the full insured amount on every item of property described in it. If one loss exhausts the full amount of insurance, that amount must be paid without any apportionment. *Couch on Insurance 2d* §54:86 (1966).

[8] As discussed below, replacement cost (without depreciation) rather than actual cash value was used to evaluate three of the buildings.

[9] The formula is:

$$\frac{\text{Insurance in force}}{\substack{\text{Insurance required} \\ (90\% \text{ of actual cash value})}} \times \text{Loss} = \text{Defendants' liability}$$

They claim that the clause provides for a penalty for insuring at less than 90 percent of actual cash value and that the title should reflect this. However, whether or not the clause is a penalty clause, we conclude that its form substantially meets the statutory requirement by virtue of the fact that the entire provision (excluding the second parenthetical) is written in eight-point capital letters.

Plaintiffs also point out that three of the five buildings (not including the Hughes Building) were insured for replacement cost. Subparagraph 1 of the Replacement Cost Endorsement states:

"In consideration of the application of the Average Clause provisions and the premium of the policy to which this endorsement is attached, the provisions of this policy applicable to building(s) are amended to substitute the term 'replacement cost (without deduction for depreciation)' for the term 'actual cash value' wherever it appears in this policy subject, however in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached."

Thus, in applying the co-insurance clause, the three buildings insured at replacement cost must be valued at replacement cost rather than at actual cash value. Plaintiffs argue that the replacement cost endorsement effectively increases the co-insurance "penalty" and must therefore also meet the requirements of ORS 743.669(2).

■ Although the replacement cost endorsement probably does require plaintiffs to maintain a greater amount of insurance in order to avoid co-insurer status, it also serves to increase (from actual cash value to replacement cost without deduction for depreciation) the amount they could recover should one of the buildings insured at replacement cost suffer a fire. We are not persuaded that, because plaintiffs must carry a greater amount of insurance, the endorsement restricts or abridges their rights within the meaning of ORS 743.669(2).

■ Plaintiffs also argue that the co-insurance clause is unenforceably vague in that the amount of insurance required to be carried to avoid the "penalty" is incapable of ascertainment until after a loss has occurred. However, it is clear from the policies that, even without a co-insurance

clause, the actual cash values of the insured properties and the amount of recovery in the event of loss are not fixed. The statutory appraisal provision contemplates disagreement about the actual cash value of properties *and* the amount of loss. That plaintiffs did not know in advance of appraisal or loss what the actual cash value of the properties was is not attributable to the co-insurance clause; it is a product of the vagaries of the factors affecting actual cash value.

Plaintiffs also contend that the co-insurance clause is unenforceable, because market value was used by the appraisers to determine the amount of loss. The effect of applying the co-insurance clause when market value is used to evaluate a loss, according to plaintiffs, is to impose a "double penalty" on them. The argument is merely an indirect attack on the appraisal award that we have already addressed under plaintiffs' first assignment of error and need not refute again.

Finally, plaintiffs argue that the appraisal proceeding did not encompass $69,400 claimed for debris removal expense and that the amount paid by defendants does not satisfy their obligation under the policies.[10] The policies provide:

"4. *Debris removal.* This insurance covers expense incurred in the removal of debris of the property covered hereunder, which may be occasioned by loss caused by perils insured against in this policy.

"* * * * *

"Debris removal shall not be considered in the determination of actual cash value in the application of any clause forming a part of this policy."

Defendants point out that, under the statutory appraisal provision, the appraisers are to make determinations of "actual cash value" *and* "amount of loss." They argue that, although the appraisers could not take debris removal expense into account in their determination of "actual cash value," they could and did take that expense into account in determining the "amount of loss."

___

[10] Although the debris removal claim was not made until relatively late in the development of the pleadings in this case, defendants do not raise any procedural or statutory bar to it.

■        However, it is clear that the policies treat "debris removal expense" and "loss to property" as separately insured items:

"THE TOTAL LIABILITY UNDER THIS POLICY FOR BOTH LOSS TO PROPERTY AND DEBRIS REMOVAL EXPENSE SHALL NOT EXCEED THE AMOUNT OF INSURANCE APPLYING UNDER THIS POLICY TO THE PROPERTY COVERED."

Under the statutory appraisal provision, the appraisers are to determine the actual cash value of the claimed property and the amount of loss to that property. It does not authorize them to determine the amount of recovery for the *separately* insured debris removal expense. It was error to grant defendants' motion for summary judgment with respect to the debris removal expense issue. It is not clear on the record before us whether plaintiffs in fact incurred any such expense or, if they did, what the actual amount of any expense was. Those issues remain to be tried.

        Reversed and remanded for proceedings not inconsistent with this decision on plaintiffs' claim for debris removal loss.