Argued and submitted July 18, reversed and remanded
with instructions December 7, 1983, reconsideration denied January 13,
petition for review allowed February 15, 1984 (296 Or 486)
See 297 Or 470, 686 P2d 339 (1984)

KENTNER et al,
*Appellants - Cross-Respondents,*

*v.*

GULF INSURANCE COMPANY,
*Respondent - Cross-Appellant.*

(25403; CA A26069)

673 P2d 1354

Lawrence W. Erwin, Bend, argued the cause and filed the brief for appellants - cross-respondents.

Robert L. Nash, Bend, argued the cause for respondent - cross-appellant. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action to recover fire insurance proceeds from defendant Gulf Insurance Company (Gulf).[1] Gulf interposed affirmative defenses to the effect that it was not on the risk at the time the fire occurred and that plaintiffs were barred from recovering on the policy because they made material misrepresentations both in applying for the policy and in their proof of loss. Plaintiffs appeal from the trial court's judgment for Gulf, which was entered after the jury returned a general verdict in Gulf's favor. Gulf cross-appeals, contending that it is entitled to greater costs than the trial court awarded.

Plaintiffs purchased the Gulf policy in July, 1977. Defendant Lumbermens Insurance Agency (Lumbermens) acted as the broker. Lumbermens' employe, defendant Bailey, completed the application form, based at least in part on information provided by plaintiffs. The application was not made part of the policy. Shortly after the annual renewal of the policy in July, 1978, Gulf conducted a routine investigation that ultimately led to its discovery that the insured premises had a value far below that indicated by the application and below the value necessary to qualify for the "deviated" homeowner's insurance market in which Gulf deals. Instead of invoking its right under the policy to cancel coverage by a 30-day notice to plaintiffs, Gulf instructed Lumbermens to request that plaintiffs cancel the policy voluntarily.[2] Plaintiffs did not respond to Lumbermens' request. Subsequently, two employes of Lumbermens signed plaintiffs' names to a form cancelling the Gulf policy, and Lumbermens obtained a replacement policy for plaintiffs with New Zealand Insurance Company Limited (New Zealand). That policy took effect in September, 1978. The fire occurred the following March.

---

[1] The Gulf policy was in fact a homeowner's policy. Both at trial and on appeal, the parties have treated the statutes and case law relevant to fire insurance as the applicable law.

[2] Gulf's stated reason for that approach was

"* * * to give Lumbermens a chance to replace the policy in another market. An involuntary cancellation makes it more difficult for the insured to get coverage elsewhere."

Plaintiffs filed proofs of loss with both Gulf and New Zealand. Gulf denied coverage. New Zealand paid some proceeds to plaintiffs. Plaintiffs and Gulf dispute the conditions on which New Zealand paid the proceeds: plaintiffs argue that New Zealand's payments "were tendered to [plaintiffs] with the understanding that those had to be repaid"; Gulf argues that the arrangement between plaintiffs and New Zealand was that the amounts would be repaid in the event of a recovery against the Gulf policy and that the arrangement was part of a "collusive" scheme between plaintiffs and New Zealand.

Plaintiffs brought this action in July, 1979. In November, 1981, while this action was pending, plaintiffs brought what purported to be a declaratory judgment action against New Zealand, seeking to have the New Zealand policy declared invalid because, *inter alia,* it was not "procured at the request of plaintiffs or by any agent for them." Not surprisingly, New Zealand admitted plaintiffs' allegations. Plaintiffs named Lumbermens as a defendant in that action. The trial court allowed motions to dismiss Lumbermens from the action against New Zealand and to consolidate that action with this action against Gulf. In April, 1982, the trial court granted summary judgment in the New Zealand action, declaring the New Zealand policy to be "of no force or effect" and incapable "of becoming a binding contract."

Before the trial of this action, plaintiffs moved for and the trial court granted a motion to dismiss as to all defendants except Gulf. The case went to trial in July, 1982. The trial court segregated the issues for trial so that, in effect, the only question to be tried initially was Gulf's liability, and the question of damages was reserved for a later trial in the event liability was found. The jury was instructed that it was to find liability, unless it found in Gulf's favor on any of four defenses: first, that plaintiffs made misrepresentations in applying for the policy; second, that there was fraud by plaintiffs on their proof of loss; third, that plaintiffs ratified Lumbermens' cancellation of the Gulf policy and its replacement by the New Zealand policy, *inter alia,* by accepting the benefits of the New Zealand policy and by making the claim for and receiving the payments from New Zealand; and, fourth, that plaintiffs had "waived" their claims against Gulf

for generally the same reasons that give rise to the ratification defense.[3]

■ Nominally, plaintiffs make eleven assignments of error. In reality, however, they make more than two dozen and place them with varying degrees of randomness under eleven headings. Only five of plaintiffs' basic contentions warrant discussion. Their first assignment is that the court erred by denying their motion to appoint an umpire for an appraisal pursuant to ORS 743.648. The motion was made on December 1, '1981, more than two years after plaintiffs initiated the action. Plaintiffs rely on *Director v. So. Carolina Ins.*, 49 Or App 179, 619 P2d 649 (1980), *rev den* 290 Or 551 (1981), for the proposition that the trial had to be abated pending the completion of an appraisal. ORS 743.648 establishes an appraisal procedure to determine the amount of the insured's loss; the procedure does not apply to the determination of the insurer's responsibility. The only question that was considered at the trial here was whether Gulf was responsible. We explained in *Director* that

"* * * the purposes of the statutory and contractual appraisal provisions would be * * * seriously frustrated by permitting an appraisal to be delayed and litigation costs to be incurred while nondispositive *questions relevant to determining the amount of loss* are adjudicated. * * *" 49 Or App at 185. (Emphasis supplied.)

*Director* does not apply to these circumstances, and we reject plaintiffs' first assignment.

■ Plaintiffs assign error to the court's denial of their motion to strike or to direct a verdict for plaintiffs on Gulf's ratification and waiver defenses. They make two basic arguments to support that assignment. They contend, first, that Lumbermens was not plaintiffs' agent for purposes of cancelling the Gulf policy or obtaining the New Zealand policy and therefore the New Zealand policy never "existed" and there was nothing plaintiffs *could* ratify or waive. Plaintiffs' underlying premise, that Lumbermens was not their agent for purposes of acquiring and cancelling insurance, is not correct. *See Hiransomboon v. Unigard Mutual Ins. Co.*, 46 Or App 493,

---

[3] We have set out the facts we consider necessary to an understanding of the issues which require discussion in this opinion. The parties moved for, and we allowed, permission for them to file briefs of greater length than ORAP 7.05(2) specifies. The summaries of facts in their briefs are considerably more detailed than our statement.

612 P2d 306 (1980). There was evidence from which the jury could find that plaintiffs ratified their agent's acts, and there was also evidence to support a finding in Gulf's favor on its largely, if not wholly, overlapping waiver defense.

The second argument plaintiffs advance for this assignment of error is that the judgment in their action against New Zealand collaterally estopped or in some other way barred Gulf from asserting the ratification and waiver defenses. Plaintiffs state:

> "It is submitted that the Final Summary Judgment in the consolidated case finding the New Zealand policy was void is conclusive. The issue was determined. * * *
>
> "In order for a judgment in favor of a defendant to operate as a bar in a subsequent action involving the same plaintiff, but a different defendant, there must exist an identity of issue between the prior action and the subsequent action. * * * The trial Court's letter opinion found 'mutuality' between Gulf and New Zealand lacking!
>
> "It is submitted that Lumbermens E & O carrier, the only real party defending, as well as Gulf because the actions were consolidated, had an opportunity to litigate the validity of the New Zealand policy in the *Kentner v. New Zealand Insurance Company Limited* case. It was found non-existent in the consolidated case, and therefore, ratification and waiver should have been taken from the jury or at a minimum the jury allowed to consider the evidence." (Citations omitted.)

We disagree. Gulf was not a party to the action between plaintiffs and New Zealand. The fact that the actions against the two insurers were consolidated did not enable Gulf to participate in the action to which it was not a party. It is not completely clear what point plaintiffs attempt to make about Lumbermens' involvement in the two actions, but we are satisfied that there is no good point to be made. Lumbermens was dismissed from both actions before they reached any dispositive stage. More fundamentally, Lumbermens' relationship to the New Zealand policy was that of an agent or other intermediary; it had no *capacity* to defend the validity of the policy, which the insured alleged and the insurer admitted had no validity. Whether or not we accept Gulf's characterization of the New Zealand action as a collusive one, we do conclude that it cannot have an estoppel effect here.

The remaining assignments of error which require discussion pertain to the fraud or misrepresentation defenses. Gulf suggests that we cannot reach those assignments. After the trial, plaintiffs' attorney spoke to two or more of the jurors and was told that the "jury found for Gulf on the ratification issue and did not decide the fraud issues."[4] Gulf concludes that "[p]laintiffs' arguments about the fraud [defenses] are moot * * *." We disagree. Suffice it to say, there was a general verdict for Gulf, and any after-the-fact interpretations or explanations by jurors are of absolutely no significance.

After the jury began its deliberations, it requested further instruction. Plaintiffs assign error to the instruction the court gave in response:

"Ladies and Gentlemen, you have requested to be informed as to whether reckless indifference constitutes fraud and what constitutes reckless indifference.

"You are instructed that in order to prove the necessary mental state in a fraud situation the party having the burden of proof must prove that there was either an intentional misrepresentation of facts or that the misrepresentation was made recklessly without knowledge of its truth or falsity. So to make a reckless misrepresentation means someone makes an assertion of facts and at the time that they make that assertion they don't really know whether it is true or not, but they assert that it is true.

"If one makes an assertion that is a result of a wrongful belief or is negligent in making that assertion, those mental states would not suffice to constitute a fraud. Fraud must be either an intentional misrepresentation or one made recklessly without knowledge of the truth or the falsity of the assertion made. You may now retire to the jury room to deliberate further. Thank you."

Plaintiffs argue that the only kind of fraud that can defeat coverage under applicable Oregon statutes is wilful fraud and that the court erred by instructing the jury that reckless misrepresentations by plaintiffs could be a basis for a finding in Gulf's favor.[5] Gulf argues that the type of reckless

---

[4] This fact was made part of the record through an affidavit by Gulf's counsel filed in connection with a post-trial motion.

[5] Gulf argues that plaintiffs' exception to the instruction does not preserve this argument. We disagree.

fraud described in the instruction is a basis for recovery in a common law fraud action and that the insurance statutes should be construed to incorporate that element of common law fraud.

ORS 743.612 provides:

"A fire insurance policy shall contain a provision as follows: 'This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' "

The "knowledge" element in a fraud action can be proved by establishing "the speaker's knowledge of [the representations'] falsity *or ignorance of its truth.*" *Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974) (emphasis supplied). In *Transamerica v. Bloomfield,* 55 Or App 31, 637 P2d 176 (1981), we noted:

"The parties' arguments do not require us to consider whether a violation of ORS 743.612, like common law fraud, can be predicated on reckless as well as intentional misrepresentations. * * *" 55 Or App at 37, n 3.[6]

The Supreme Court *may* have decided the question in *Willis v. Horticultural Fire Relief,* 69 Or 293, 137 P 761, AC' 16A 449 (1914). There, in discussing the application of the predecessor of ORS 743.648, the court said:

"* * * The terms 'fraud' and 'false swearing,' [in the statute] being used together, must have the same application, and the false swearing must have been knowingly and willfully false * * *." 69 Or at 296.

However, at the conclusion of its discussion in *Willis,* the court stated:

"We leave out of account any consideration of false swearing in ignorance of the facts or by mistake which would not avoid the policy, being guarded by the instruction given expressly cautioning the jury, namely: 'The untrue statement, in order to avoid the policy, must have been knowingly and intentionally made by the insured with knowledge of its

---

[6] We understand the Supreme Court to have overruled *Transamerica* on unrelated grounds in *Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 667 P2d 494 (1983).

falsity.' Such an oath in such a case would be moral fraud and not merely legal fraud. * * *" 69 Or at 299.

We are not certain what the last quoted passage means. It could mean that the court was not *reaching* any issue relating to misrepresentations made "in ignorance of the facts or by mistake"; or it could mean that the court's earlier comments regarding deliberate misrepresentations *did not apply* to unintentional falsehoods and that the latter "would not avoid [a] policy."

■      Whether or not *Willis* controls, we conclude that only wilful misrepresentations, made with knowledge of their falsity, can be the basis for voiding a policy under ORS 743.612. The statute provides that a policy will be void if the insured *wilfully* conceals or misrepresents material facts. The statute also provides for avoidance in the event of "fraud" and "false swearing." As pointed out in *Transamerica v. Bloomfield, supra,* however, ORS 743.612 does not incorporate *all* the elements of common law fraud. *Cf. Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 667 P2d 494 (1983) (holding that the clear and convincing evidence standard of proof applicable in fraud actions does not apply to the proof of misrepresentations under ORS 743.612). The objective of ORS 743.612 is to discourage insurance fraud. *See Mutual of Enumclaw Ins. v. McBride, supra,* 295 Or at 407. That objective would not be substantially furthered by making reckless misrepresentations a basis for policy avoidance, and doing so would be contrary to the law's preference against forfeitures of insurance coverage. In the light of those considerations and the statute's earlier reference to wilful misrepresentations, we conclude that the fraud contemplated by ORS 743.612 is knowing and wilful fraud and not the kind of reckless fraud described in the challenged instruction.[7]

The giving of the instruction was error and, in the context of the other instructions, the erroneous instruction could have affected the jury's findings on both the fraud in the

---

[7] Gulf also relies on ORS 743.042(1), the general provision of the insurance code relating to misrepresentation on applications. Assuming without deciding that reckless fraud might be sufficient to avoid a policy under that statute, ORS 743.612 is the more specific statute and could control. *See Mutual Life Ins. Co. v. Muckler,* 143 Or 327, 21 P2d 804 (1933).

inducement and the fraud on the proof of loss defenses. A remand for further proceedings on both is necessary.[8]

■        Two of plaintiffs' other assignments involve matters which are likely to arise on remand. First, they contend that, in order to avoid coverage, an insurer must establish that it relied on a misrepresentation. We stated in *Transamerica v. Bloomfield, supra:*

> "Hence, under the Supreme Court's interpretations of the contractual provision required by ORS 743.612, the pro-scribed misrepresentations must be made knowingly and wilfully, but the showing necessary to defeat coverage *does not include* other elements of common law fraud such as intent to defraud or mislead, *reliance* or actual injury." 55 Or App at 35. (Emphasis supplied.)

There is language in *Waller v. City of New York Ins. Co.,* 84 Or 284, 294-95, 164 P 959, AC' 18C 139 (1917), that is contrary to our statement in *Transamerica,* but we do not think the *Waller* language survives *Henricksen v. Home Ins. Co.,* 237 Or 539, 542-43, 392 P2d 324 (1964). We adhere to our conclusion in *Transamerica* that reliance is not an element of fraud under ORS 743.612 and therefore does not have to be proved in connection with Gulf's fraud defenses.[9]

The final assignment we address is that the trial court erred by admitting evidence about plaintiffs' application for the Gulf policy, because the application was not made part of the policy. ORS 743.045(1) provides:

> "Except as provided in ORS 743.075, every contract of insurance shall be construed according to the terms and conditions of the policy. Where the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. If the application is not so delivered to the insured, it shall not be a part of the insurance policy *and the insurer shall be precluded from introducing such application as evidence in*

---

[8] We have considered whether the error in the instruction was harmless and have concluded that it was not. It enabled the jury to find reckless misrepresentations to be a basis for a verdict in Gulf's favor. Although there is abundant support in the record for a finding that plaintiffs committed wilful and knowing fraud, there is also sufficient evidence to support a finding in accordance with the "reckless indifference" theory of the instruction. In any event, the fact that the jurors *asked* to be instructed about the applicability of the theory precludes us from holding that they were extremely unlikely to find that the misrepresentations were merely reckless.

[9] *See* n 7, *supra.*

*any action based upon or involving such policy."* (Emphasis supplied.)

The emphasized language was added to the statute by Oregon Laws 1971, chapter 231, section 22, and has not previously been interpreted by an Oregon appellate court. Plaintiffs argue that the statute bars any evidence regarding an undelivered application, even when the issue is whether the insured made misrepresentations on that application. Gulf disagrees. Plaintiffs' interpretation of ORS 743.045(1) is a supportable one. However, the difficulty we have with that interpretation is that it attributes to the legislature an intent to effect a substantial change in the law in an indirect way.

**7.** If plaintiffs' understanding is correct, insurers would be unable to avoid policies for misrepresentations on applications that have not been made part of those policies. Although the evidentiary limitation in ORS 743.045(1) does not in terms bar insurers from cancelling policies or refusing to pay claims because of a misrepresentation on an undelivered application, the limitation would make it impossible for the insurer to prevail in any action brought by the insured as a result of the cancellation or nonpayment. However, the 1971 act through which the evidentiary limitation was adopted does not indicate in any direct way that an insurer's *right* to avoid a policy because of misrepresentations on an application is contingent on the delivery and integration of the application. For example, the act does not amend ORS 743.042(1). In our view, the 1971 evidentiary limitation was added to the existing "entire contract" statute to further the basic purpose of the statute, *i.e,* to prevent insurers from adding *terms* to policies by reference, *see Bunn v. Monarch Life Insurance,* 257 Or 409, 415-16, n 4, 478 P2d 363 (1970), or from relying on extrinsic sources to explain terms of policies. We do not think that the statute was intended to exclude evidence of the document by which the misrepresentations were allegedly made in an action based on or defended against because of those misrepresentations. We therefore conclude that the evidence in question here was admissible.

Our disposition of the appeal makes it unnecessary to address Gulf's cross-appeal.

Reversed and remanded for proceedings not inconsistent with this opinion.