Argued and submitted March 8, affirmed as modified April 17, 1985

## COLUMBIA EDGEWATER COUNTRY CLUB,
*Appellant - Cross-Respondent,*

*v.*

## INDUSTRIAL INDEMNITY COMPANY,
*Respondent - Cross-Appellant.*

## (A8108-04893; CA A30894)

698 P2d 500

William Larkins, Jr., Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Terry DeSylvia, and Black, Tremaine, Lankton, Krieger & Schmeer, Portland.

Mildred J. Carmack, Portland, argued the cause for respondent - cross-appellant. With her on the briefs were Kenneth E. Roberts, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

JOSEPH, C. J.

**JOSEPH, C. J.**

Plaintiff's clubhouse was destroyed by fire in December, 1979. In a non-jury trial on its claim for breach of a fire insurance contract, judgment was rendered for plaintiff, including attorney fees. It appeals the trial court's calculation of the damage award; defendant, the insurer, cross-appeals.

At the time of the loss plaintiff's several buildings were insured under a blanket policy with a liability limit of $1,543,332.[1] If a loss occurred, defendant was to pay the lesser of:

"(a)   the amount of this policy applicable to the damaged or destroyed property;

"(b)   the replacement cost of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or

"(c)   the amount actually and necessarily expended in repairing or replacing said property or any part thereof."

The policy contained a 90 percent co-insurance clause. It also provided that, if the parties could not agree on the amount of a loss, either could demand that the loss be established by appraisal.

After the fire, defendant employed an adjuster to settle the loss claim. During the adjustment phase a dispute arose over the salvage value of the clubhouse remains. That led to an appraisal proceeding for the limited purpose of determining the salvage value. The appraisal established a salvage value of $91,800.

The adjuster and plaintiff's representatives encountered difficulty in communicating with one another, and the agent who sold the policy, J.B.L.&K., became a conduit for communication between the parties. During the adjustment phase, defendant presented a settlement offer to plaintiff, through J.B.L.&K., which contained a statement of replacement cost value, subject to the ultimate resolution of the salvage value issue by the appraisal. Plaintiff's president signed the agreement, but there was evidence at the trial that he did so only after assurances from J.B.L.&K. that the

---

[1] The face value of the policy, $1,505,690, was supplemented by an inflation protection endorsement to the policy.

purpose of the agreement was merely to facilitate prompt payment by defendant of the undisputed amount due plaintiff for the loss and not to settle finally the ultimate replacement cost issue.[2] The trial court stated in its finding of facts that the parties at no time agreed on a replacement cost value.

The court also found that the replacement cost of the clubhouse was "well in excess of the policy limit," and concluded that the proper basis for determining the loss to be paid was the policy limit for all of the property covered under the policy, not just the proportion of the limit that the value of the clubhouse bore to the value of all the covered property. From that policy limit the court then deducted the salvage value determined by the appraisal to arrive at defendant's ultimate liability.

■  We deal first with the cross-appeal, because it attacks the trial court's beginning point. Defendant disputes the trial court's application of the full policy limit, less salvage, to the clubhouse. It does not claim that an average clause is in the policy, under which the coverage would be apportioned among the buildings. *See Schnitzer v. So. Carolina Ins.,* 62 Or App 300, 661 P2d 550 (1982); Couch on Insurance (Second) § 54:87 (1966). Rather, defendant claims that the co-insurance clause must be given effect before plaintiff could be entitled to the full policy limits. Aside from the fact that defendant's concern with the operation of the co-insurance clause has arisen for the first time on appeal, we have a finding of fact by the trial court that the policy limit applicable to the structure destroyed by fire was $1,543,332. The issue was put to the trial court as an issue of fact, and we have found nothing in the record that shows that defendant ever presented to the court any legal theory or basis for making it a question of law. There is some evidence in the record supporting the trial court's finding, and we are bound by it. *Illingworth v. Bushong,* 297 Or 675, 694, 688 P2d 379 (1984).

■  Defendant also assigns as error the trial court's finding that there was no agreement on replacement cost value. Again, we are bound by the trial court's finding of fact, because there is substantial evidence to support it. *Illingworth*

---

[2] Before the lawsuit was filed, defendant paid plaintiff $1,395,686. Plaintiff sued for $147,646 and was awarded $55,846.

*v. Bushong, supra.*

■ In its appeal plaintiff assigns as error the trial court's deduction of the salvage value from the policy limit. We agree that that was an error of law.[3] Salvage value, in this instance, only has relevance to the replacement cost of the destroyed building. The remains only had a relevant value if they could be incorporated into the reconstruction of the building as it had previously existed. Logically, the salvage value of the remains should be deducted from the replacement cost of the clubhouse. We are persuaded, after an examination of the record, that that calculation would still show the replacement cost value to be "well in excess of the policy limit." Salvage value has no relevance except to a determination of replacement cost value and is not to be deducted from an award of the policy limit once it is determined that replacement cost value, minus salvage, exceeds the applicable policy limit. Under the authority of the Oregon Constitution, Article VII (amended), section 3, we modify the judgment to increase plaintiff's judgment to include the entire balance of the policy limit claimed by plaintiff, $147,646.

Judgment modified to increase damage award to $147,646; affirmed as modified.

---

[3] Plaintiff's tort claim, stricken by the court, does not merit discussion on appeal.