[No. 53061-5-I.   Division One.   February 22, 2005.]

JEFF WETMORE, ET AL., *Appellants*, v. UNIGARD INSURANCE
COMPANY, *Respondent*.

940

*J. Robert Leach*, for appellants.
*Matthew S. Adams*, for respondent.

¶1 Cox, C.J. — At issue in this appeal is whether the insureds under a policy of insurance issued by Unigard Insurance Company are entitled to the full policy limits for a fire loss rather than a reduced amount calculated on the basis of the policy's coinsurance provision. We hold that the coinsurance provision applies in this case and the policy is not ambiguous. Moreover, the coinsurance provision does not violate the over-insurance prohibition of RCW 48-.27.010. We affirm.

¶2 The facts are undisputed. Unigard insured the Majestic Inn, which is located in Anacortes, Washington, under a commercial multiline policy. Jeff Wetmore and Virginia Wetmore (the Wetmores) are the insureds under the policy. The policy insures the hotel and its contents up to $1,725,000. The policy contains a 90 percent coinsurance provision that we describe more fully later in this opinion.

¶3 A fire damaged the property in February 2001. The market value, on a cash basis, of the improvements was only $950,000 according to an appraisal done after the fire. The Wetmores elected to make a claim on an actual cash basis for $949,000.[1] Unigard paid this claim.[2]

¶4 Thereafter, the Wetmores claimed additional replacement cost coverage under the policy for the $776,000

---

[1] This amount is the difference between the actual cash value and the $1,000 deductible under the policy.

[2] Appellants' Opening Br. at 7.

difference between the policy limit of $1,725,000 and the $949,000 actual cash basis payment by Unigard.[3] Unigard disputed the amount of this additional claim.

¶5 The Wetmores commenced this declaratory judgment action, seeking a determination that the coinsurance provision does not apply to the replacement cost claim. Noting that the replacement cost bid for the building is $3,577,700 and that the insurance for the property—$1,725,000—is less than the replacement cost bid, Unigard claims the coinsurance provision applies. Because 90 percent of the replacement cost bid—$3,219,930—is the total amount of insurance that the Wetmores should have carried on the property, Unigard claims the amount of the replacement cost payment must be reduced accordingly. The trial court granted Unigard's summary judgment motion and denied the Wetmores' request for attorney fees.

¶6 The Wetmores appeal.

## COINSURANCE

¶7 We review a trial court's order granting summary judgment de novo.[4] The interpretation of an insurance policy is a question of law that we review de novo.[5] In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists.[6] An ambiguity exists if the

---

[3] Appellants' Opening Br. at 7.

[4] *White v. Allstate Ins. Co.*, 124 Wn. App. 60, 63, 98 P.3d 496, 497 (2004).

[5] *White*, 124 Wn. App. at 63 (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984)).

[6] *Hess v. N. Pac. Ins. Co.*, 122 Wn.2d 180, 186, 859 P.2d 586 (1993) (quoting *Transcont'l Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988)).

language is fairly susceptible to two different reasonable interpretations.[7]

¶8 The Wetmores argue that application of the coinsurance provision for the replacement cost claim is determined using the actual cash value of the insured property, not its replacement cost. We disagree.

■ ■ ¶9 Generally, coinsurance provisions require the insured to maintain insurance on covered property in an amount at least equal to a specified percentage. Failure to do so will make the insured a coinsurer who will bear a proportionate amount of the loss.[8] The intent of coinsurance is to reward those who insure at close to full value and penalize those who insure at less than full value.[9]

¶10 The effect of a coinsurance clause is illustrated in the following example from a Washington case:

> A 90% coinsurance clause means that the insured agrees that the amount of coverage purchased (in this case $500,000) is equal to at least 90% of the replacement cost value of the building insured. If not, at the time of a loss, the insured will become a "coinsurer" of the loss. For instance, if $500,000 were only 80% of the actual replacement cost value of the building, the insured would be underinsured by 10% and would become a 10% coinsurer for the amount of any loss. In that hypothetical, if the amount of damage sustained as a result of a fire were $50,000, the insured would be paid $45,000 by the insurance company, and would be responsible for the remaining 10% of the loss. The purpose of the penalty is to penalize an insured who tries to save money by buying less than full coverage, realizing that the vast majority of losses are small and will be more than adequately covered by the chosen limits.[10]

---

[7] *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993).

[8] 44 AM. JUR. 2D *Insurance* § 1499 (2004).

[9] Jonathan M. Purver, Annotation, *Validity, Construction, and Effect of Insurance Policy Provision Requiring Insured To Maintain Coverage To Specified Value of Property (Coinsurance Clause)*, 43 A.L.R. 3d 566 (2004).

[10] *Evergreen Int'l, Inc. v. Am. Cas. Co.*, 52 Wn. App. 548, 550, 761 P.2d 964, 964-65 (1988).

■ ¶11 Generally, coinsurance clauses are enforceable absent a statutory prohibition to the contrary, although some jurisdictions subject coinsurance provisions to statutory requirements.[11] Washington does not have such a statute.

■ ¶12 Here, sections E, F, and G of the policy are the most relevant to the issues we decide.

¶13 Section E, LOSS CONDITIONS of the policy states at subsection 7, "Valuation," "We will determine the value of Covered Property in the event of loss or damage as follows: a. At actual cash value as of the time of loss or damage . . . ."

¶14 Section F, ADDITIONAL CONDITIONS of the policy states the coinsurance provision at issue here:

1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following [value] condition applies.

a. *We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.*

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and

---

[11] *See, e.g., Schnitzer v. S.C. Ins. Co.*, 62 Or. App. 300, 661 P.2d 550 (1983) (coinsurance clause written in eight point capital letters substantially complied with statutory requirements); *U.S. Fire Ins. Co. v. Roberts*, 541 So. 2d 1297 (Fla. Dist. Ct. App. 1989) (fire policy's coinsurance clause was void for failure of policy to include statement, either printed or stamped on face of policy, to effect that rate charged in policy was based on use of coinsurance clause, as required by statute).

(4) Subtract the deductible from the figure determined in step (3).

We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.[12]

¶15 The final relevant section of the policy, Section G, OPTIONAL COVERAGES states in relevant part:

3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

. . . .

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. *In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.*

. . . .

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), . . . :

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.[13]

---

[12] Clerk's Papers at 50 (emphasis added).

[13] Clerk's Papers at 53-54 (emphasis added).

¶16  In this case, the Wetmores elected the option under the policy to first make an actual cash value claim followed by a replacement cost claim.[14] This option is expressly allowed under subsection 3.c. of the OPTIONAL COVERAGES section of the policy. Unigard paid $949,000 after subtracting the $1,000 deductible from the $950,000 actual cash value established by the market value appraisal.

¶17  To the extent that the Wetmores make a replacement cost claim, the question is whether and to what extent the coinsurance provision applies. We turn first to Section F of the policy to answer these questions.

¶18  The relevant provision states:

1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following [*value*] condition applies.

a. We will not pay the full amount of any loss if the *value of [the] Covered Property* at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.[15]

Here, a 90 percent Coinsurance provision appears in the Declarations, satisfying the first condition of this coinsurance provision.

## VALUATION

¶19  We turn next to "Valuation," which is subsection E.7 of the policy. It states:

---

[14] The concept of replacement cost coverage is addressed in *Hess*, 122 Wn.2d at 182-83. There, the state Supreme Court stated:

Historically, the underlying purpose of property insurance is indemnity. Traditional coverage was for the actual or fair cash value of the property. The owner was indemnified fully by payment of the fair cash value, in effect the market value, which is what the owner lost if the insured building was destroyed. 6 J.&J. Appleman, *Insurance* § 3823 (1972).

However, it was recognized that an owner might not be made whole because of the increased cost to repair or to rebuild. Thus, replacement cost coverage became available.

[15] (Emphasis added.)

We will determine the *value of Covered Property* in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage. . . .

(Emphasis added.)

There is no dispute that this provision governs the valuation of Covered Property when a claim for actual cash value is made. But that does not end our inquiry because an actual cash value claim is not at issue. Unigard already paid such a claim in this case.

¶20 One other provision bears on the question we decide. That provision is subsection 3.a under Section G, OPTIONAL COVERAGES, of the policy:

3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, *Valuation*, of this Coverage Form.

(Emphasis added.)

¶21 The plain words of these provisions, when read together, make clear that value of the property covered by the policy is a condition to the amount to be paid. Moreover, an insured's exercise of the right to elect the type of claim made affects the pertinent value. Specifically, an insured has two claim options—actual cash value *instead of* replacement cost or actual cash value *in addition to* replacement cost. Reading these provisions together and giving full effect to each, we conclude that replacement cost valuation applies to the Wetmores' second claim, the only claim that Unigard contests. Neither the policy language nor logic supports the view that this replacement cost claim is to be determined on an actual cash value basis (ACV).

¶22 Although the Wetmores argue that coinsurance is not mentioned at all in the optional replacement cost provision, it is included in "Agreed Value," the first of the three optional coverages. According to the policy, "[t]he Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies." Taken as a whole, an average person would understand that of the three optional coverages, only one—"Agreed Value"—is exempt from the application of coinsurance

requirements. To find otherwise would necessitate ignoring a clear exemption that applies to only one of three optional provisions, giving it no effect.

¶23 Moreover, the coinsurance provision clearly applies to the "Loss Conditions, Valuation" section of the policy, as the "Additional Conditions" section declares that "[t]he following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions." Once replacement cost coverage is chosen, and "replacement cost" replaces "actual cash value" in the valuation section of the policy, the coinsurance provision must also apply to the replacement cost coverage.

¶24 The coinsurance provision did not apply to the initial ACV claim, since the policy limit exceeded 90 percent of the ACV. The Wetmores obtained a replacement cost estimate of $3,577,700. Unigard informed the Wetmores that should they make a replacement cost claim, a 53 percent coinsurance penalty would apply since 90 percent of the replacement cost ($3,219,930) exceeded the $1,725,000 Limit of Insurance they carried.[16]

¶25 In arguing that the coinsurance penalty does not apply to a replacement cost claim, the Wetmores point out that the word "value" is not defined in the policy. This is true. But the Wetmores further claim that the term "Replacement Cost" replaces "actual cash value" only in the "Valuation" subsection, not the undefined term "value" in the "Coinsurance" subsection. This argument is unpersuasive.

¶26 The argument is not a reasonable alternative construction because it fails to address why a coinsurance provision should be determined by actual cash value when the amount of a replacement cost claim is at issue. This policy permits an insured the right to both an actual cash value claim and a replacement cost claim. The underlying

[16] The 90 percent figure ($3,219,930) represented the amount of insurance the Wetmores were required to carry in order to avoid the coinsurance penalty. Dividing that amount by the amount they actually insured the building for ($1,725,000) resulted in a 53 percent coinsurance penalty.

purpose of coinsurance is to encourage an insured to insure at least to a minimum percentage of a property's value. With this purpose in mind, there simply is no logical reason to limit valuation to actual cash value (generally a much lower value than replacement cost value) when a replacement cost claim is made.

¶27 Moreover, the lack of any reference to the coinsurance provision in the replacement cost coverage provision indicates that Unigard's replacement cost liability is not limited in ways other than those explicitly stated in the optional replacement cost provision.

## AMBIGUOUS PROVISIONS

¶28 The Wetmores next argue that the policy is ambiguous. We disagree.

¶29 If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity.[17] An insurance policy provision is ambiguous if it is susceptible to two reasonable and fair interpretations.[18]

¶30 The Wetmores argue that the policy provisions are ambiguous and, since they are susceptible to two reasonable interpretations, the court should adopt the interpretation most favorable to the insured. Specifically, the Wetmores contend that the undefined term "value" in the coinsurance provision is ambiguous given the "general rule" of basing coinsurance provisions upon the actual cash value of insured property.[19] However, the Wetmores cite no authority for the proposition that replacement cost cannot be the basis of coinsurance provisions. In fact,

> [i]nsurers commonly offer insureds the option of insuring improvements for replacement costs, in recognition of the fact that the cost of repairing or replacing an older structure will be

---

[17] *Am. Star Ins. Co.*, 121 Wn.2d at 874.

[18] *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 484, 687 P.2d 1139 (1984).

[19] *See* 15 LEE R. RUSS, COUCH ON INSURANCE 3D § 220:16 (1999).

greater than its value. Depending upon the wording of the individual policy, a coinsurance clause can be triggered by a replacement cost provision to actually reduce the insurer's liability below the amount of the actual loss.[20]

¶31 Unigard cites three cases from other jurisdictions to support its contention that its coinsurance provision is a standard provision similar to others found in commercial policies that were held to not be ambiguous.[21] The Wetmores maintain that the policies in those cases are distinguishable because the coinsurance clause clearly stated that "actual cash value" was the basis of the coinsurance clause in two of the cases; in the third, the policy stated that "replacement cost" replaced "actual cash value" wherever it appeared in the policy. None of the cases answers the question before us.

¶32 In *Schnitzer*, unlike here, the issue of the ambiguity of the coinsurance provision was governed by statute, which laid out specific requirements for making the provision conspicuous in the policy.[22]

¶33 Both *Fry* and *Delgado* considered the validity of coinsurance provisions, although this was not the central issue in either case. The *Fry* court noted that coinsurance provisions were common in commercial policies in Ohio and were, in the absence of a contrary statute, valid. While there was no consideration of replacement cost coverage, the insured contended that the policy language was so complex it rendered the provisions ambiguous. The court said, "[w]hile the language quoted above is not written in layman's terms, the concept behind coinsurance is understandable when explained by someone who is informed on the subject."[23]

---

[20] 15 COUCH ON INSURANCE 3D § 220:24, at 220-24.

[21] *Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App. 3d 303, 750 N.E.2d 1194 (2001); *Schnitzer*, 62 Or. App. at 307-08; *Delgado v. Costello*, 91 N.M. 732, 580 P.2d 500 (1978).

[22] *Schnitzer v. S.C. Ins. Co.*, 62 Or. App. 300, 306-07, 661 P.2d 550 (1983).

[23] *Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App. 3d 303, 313, 750 N.E.2d 1194 (2001); *Delgado v. Costello*, 91 N.M. 732, 580 P.2d 500 (1978).

¶34 *Delgado* is even less helpful. The court dismisses the ambiguity argument by simply acknowledging, and quickly dismissing, "some argument that the policy provisions are ambiguous," with "this argument is without merit."[24]

¶35 Finally, the Wetmores argue that it is not the policy language alone but also its structure that creates ambiguity. Specifically, they argue that Unigard's reading "requires an adept manipulation of three separate sections of Unigard's policy . . . [t]his structure is extremely confusing and by itself renders Unigard's policy ambiguous." However, "[c]omplexity or the necessity to interrelate policy provisions does not alone render a policy ambiguous."[25] The policy provisions, read together and in context as the rules of interpretation require, are not ambiguous.

## OVER-INSURANCE

¶36 The Wetmores argue that the construction urged by Unigard would force them to violate RCW 48.27.010, which prohibits over-insurance. We disagree.

¶37 RCW 48.27.010[26] prohibits "over-insurance", i.e., insurance in excess of the "fair value" (defined as cost of replacement *less* depreciation). However, replacement in-

---

[24] *Delgado*, 91 N.M. at 734.

[25] *Hess*, 122 Wn.2d at 186 (citing *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992)).

[26] The statute provides, in relevant part, as follows:

(1) Over-insurance shall be deemed to exist if property or an insurable interest therein is insured by one or more insurance contracts against the same hazard in any amount *in excess of the fair value of the property* or of such interest, as determined as of the effective date of the insurance or of any renewal thereof, or in those instances when insured value is for improvements and land.

(2) For the purposes of this section only *the term "fair value" means the cost of replacement less such depreciation as is properly applicable to the subject insured.*

(3) No person shall knowingly require, request, issue, place, procure, or accept any insurance *contract which would result in over-insurance of the property* or interest therein proposed to be insured, except as is provided in RCW 48.27.020.

RCW 48.27.010 (emphasis added).

surance, in situations such as this one, is authorized specifically by RCW 48.27.020: "[T]he insurer may in connection with a special provision or endorsement made a part of the policy insure the cost of repair or replacement of such property, if damaged or destroyed by a hazard insured against, and without deduction of depreciation."

¶38 The Supreme Court recognized this in *Hess v. North Pacific Insurance Co.*, noting that replacement coverages "go beyond the concept of indemnity," permitting protection against the risk of deterioration.[27] Therefore, the over-insurance statute cannot be read to prohibit insuring a property close to or at its replacement cost value as required by the coinsurance provision in this case.

## ATTORNEY FEES

¶39 The Wetmores argue that they are entitled to attorney fees based on *Olympic Steamship Co. v. Centennial Insurance Co.*[28] We hold that they are not entitled to fees based on that case.

¶40 That case establishes that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees . . . ."[29] Because the Wetmores do not prevail and fees are not warranted under the authority they cite, we decline to grant the request.

¶41 We affirm the summary judgment order.

COLEMAN and SCHINDLER, JJ., concur.

---

[27] *Hess v. N. Pac. Ins. Co.*, 122 Wn.2d 180, 183, 859 P.2d 586 (1993).

[28] 117 Wn.2d 37, 811 P.2d 673 (1991).

[29] *Olympic S.S.*, 117 Wn.2d at 54.