# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3232

_____

Buddy Bean Lumber Company

*Plaintiff - Appellant*

v.

Axis Surplus Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: March 13, 2013
Filed: May 23, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

After electrical wiring was stolen from its lumberyard, Buddy Bean Lumber Company (Buddy Bean) filed a claim with its insurer, Axis Surplus Insurance Company (Axis), to recover the actual cash value of the wire. Axis refused to pay the full claim, citing a coinsurance provision in the policy. Buddy Bean then brought this action seeking to recover under the policy. Both parties moved for judgment on the

pleadings. The district court granted the insurer's motion, and Buddy Bean appeals. We reverse and remand for entry of judgment in favor of Buddy Bean.

I.

Buddy Bean owns a lumberyard in Hot Springs, Arkansas which it insured through Axis beginning in February 2010. The policy set specific coverage limits for various buildings in the lumberyard, including its saw and planing mills. The policy contained a coinsurance provision which provided that the saw and planing mills were insured on a 90% coinsurance basis.

Coinsurance divides risk between the insurer and the insured based on the amount of insurance purchased relative to the value of the covered property. 15 Couch on Insurance § 220:3 (3d ed. 2005). Under the coinsurance provision at issue in this case Buddy Bean was required to maintain a policy limit with Axis that was equal to at least 90% of the value of the mills. If Buddy Bean's policy limit were below that percentage of value, it would be penalized on its claims in proportion to the shortfall.

After thieves stole electrical wiring from Buddy Bean's saw and planing mills in August 2010, the company filed a claim with Axis seeking to recover the actual cash value of the stolen wire. Axis determined that the loss was covered under the policy and tendered Buddy Bean an interim payment of $100,000 while it investigated the matter. After some negotiation the two parties agreed that the stolen wire had an actual cash value of $725,000, but Axis declined to pay that amount since it considered the claim to be subject to a large coinsurance penalty. Axis stated that the value of the mills for purposes of the coinsurance provision should not be measured by their actual cash value, which the parties agreed was $4,050,000. Instead, Axis argued, the mills should be valued by their replacement cost, which it claimed was $21,024,000. Since Buddy Bean's policy limit for the mills was

$3,837,500, Axis contended that it had failed to insure them adequately and could therefore not recover more on its claim than the interim payment already tendered.

Buddy Bean then brought this action, arguing that the term "value" in the coinsurance provision of its policy means the actual cash value of the saw and planing mills because that kind of claim was filed. Its policy limit is therefore sufficient to avoid any coinsurance penalty. Axis countered that Buddy Bean's decision to purchase optional replacement cost coverage changed the definition of "value" in the coinsurance provision from "actual cash value" to "Replacement Cost (without deduction for depreciation)." Both parties moved for judgment on the pleadings.

The district court agreed with Axis' interpretation of the policy. It concluded that the policy language was unambiguous and that the value of the mills should be measured by their replacement cost because Buddy Bean had purchased replacement cost coverage, thereby changing the definition of "value" in the coinsurance provision. After Buddy Bean stipulated to the replacement cost of the mills and its deductible under the policy, the district court calculated the applicable coinsurance penalty and determined that Buddy Bean could only recover approximately $98,000 of its loss. Since it had already been tendered $100,000, Buddy Bean was not entitled to any further payment and judgment was entered for Axis. Buddy Bean appeals, arguing that the district court erred in interpreting the insurance policy.

II.

We review de novo a grant of judgment on the pleadings. Thach v. Tiger Corp., 609 F.3d 955, 957 (8th Cir. 2010). Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law. Id. The parties agree that Arkansas law governs the interpretation of Buddy Bean's insurance policy. Although this policy is an industry standard form which has been the subject of litigation before various courts, no

Arkansas court has interpreted it. Our task in this diversity action is to predict how the Arkansas Supreme Court would interpret the policy. See Owners Ins. Co. v. European Auto Works, Inc., 695 F.3d 814, 818 (8th Cir. 2012).

In Arkansas "[t]he law regarding construction of an insurance contract is well settled." Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001). If the policy's language is unambiguous, the plain language controls. Id. If the policy language is ambiguous, the policy must be construed "liberally in favor of the insured and strictly against the insurer." Id. Language is ambiguous "if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." Id. Whether language is ambiguous is a question of law. Id. Arkansas law directs that we consider the "whole policy" to determine the meaning of any particular clause within it. Cont'l Cas. Co. v. Didier, 783 S.W.2d 29, 32 (Ark. 1990). We must interpret the policy so that "all of its parts harmonize" if possible. Cont'l Cas. Co. v. Davidson, 463 S.W.2d 652, 655 (Ark. 1971). An interpretation "which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." Id.

Coinsurance provisions such as the one at issue here have long been enforceable in Arkansas. See Commodity Credit Corp. v. Am. Equitable Assurance Co., 133 S.W.2d 433 (Ark. 1939). The coinsurance provision in Buddy Bean's policy, section F.1, states: "[Axis] will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property." (emphasis added). Under section E.7 of the policy, the standard definition for the term "value of Covered Property" is the property's "actual cash value as of the time of loss or damage."

If the insured chooses to buy certain optional expanded coverages under the policy, the definition of the "value of Covered Property" can change. As shown in

-4-

the declarations at the front of its policy, Buddy Bean chose to purchase optional replacement cost coverage.  This coverage allowed Buddy Bean to file claims for the replacement cost of any losses, a figure which may often be higher than the actual cash value of the loss.

Section G, titled Optional Coverages, details Buddy Bean's replacement cost coverage and states in part:

> 3.       Replacement Cost
>    a.    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in [section E.7] of this Coverage Form. . . .
>    c.    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides [under certain conditions].

Buddy Bean contends that the proper interpretation of the term "value of Covered Property" in the coinsurance provision depends on the type of claim it files.

In support of its interpretation of this critical term in the policy, Buddy Bean relies on a decision of the Washington Court of Appeals.  Wetmore v. Unigard Ins. Co., 107 P.3d 123 (Wash. Ct. App. 2005).  In Wetmore, the Washington appellate court interpreted the same industry standard insurance policy that Buddy Bean purchased.  Id. at 127–28.  The court concluded that the proper interpretation of the coinsurance provision varied depending upon whether the insured filed an actual cash value claim or a replacement cost claim.  Id.  If the insured's claim was for actual cash value, the actual cash value of the relevant property should be used.  Id. at 127. If the insured filed a replacement cost claim, then the coinsurance provision should be calculated using the relevant property's replacement cost.  Id. at 127–28.  Since

a replacement cost claim was at issue in <u>Wetmore</u>, the court determined that the coinsurance provision should be calculated using the property's replacement cost. <u>Id.</u>

Buddy Bean stresses that while it paid for optional replacement cost coverage, it did not file a replacement cost claim here. The company emphasizes that it paid for basic insurance coverage as well as optional expanded coverage it could elect under certain circumstances. According to Buddy Bean, there would be no point in purchasing replacement cost coverage if the insured would then be penalized on claims made under its basic coverage. Since Buddy Bean's claim is for the actual cash value of the stolen wire, it asserts that the saw and planing mills should be valued according to their actual cash value for purposes of the coinsurance provision. Buddy Bean only seeks the actual cash value of the stolen wire, and the entire value of the saw and planing mills is relevant solely in calculating whether its claim for the stolen wire is subject to a coinsurance penalty.

According to Axis, the term "value of Covered Property" in the coinsurance provision should mean the replacement cost of Buddy Bean's saw and planing mills. Axis primarily relies on two other cases construing this same insurance policy. In <u>Wenrich v. Employers Mutual Insurance Companies</u>, 132 P.3d 970 (Kan. Ct. App. 2006), the insured filed a replacement cost claim, but the insurer refused to pay the full claim because of the policy's coinsurance provision. <u>Id.</u> at 974. The Kansas Court of Appeals agreed with the insurer's interpretation, concluding that the unambiguous effect of purchasing replacement cost coverage was "the substitution of 'replacement cost' for 'actual cash value'" in the coinsurance provision. <u>Id.</u> at 975–76.

Three years later our court was faced with the same insurance policy in a case controlled by Kansas law. <u>State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.</u>, 572 F.3d 511, 516–17 (8th Cir. 2009). In <u>Boardwalk Apartments,</u>

the insured filed a replacement cost claim after a fire had damaged certain buildings it owned. Id. at 513–14. Following Wenrich, we concluded under Kansas law that the policy was unambiguous and that the coinsurance provision should be read using the property's replacement cost because a replacement cost claim had been made. Id. at 516–17 (citing Wenrich, 132 P.3d at 975). Axis argues that the policy's language is unambiguous and points to the declarations in the front of the basic policy. There, it indicates that Buddy Bean paid for optional replacement cost coverage as part of its policy. According to Axis, that changed the definition of "value of Covered Property" with the effect that "actual cash value" was replaced by "Replacement Cost (without deduction for depreciation)."

Boardwalk Apartments is not controlling here for two reasons. First, in this diversity case we are interpreting Buddy Bean's insurance policy under Arkansas law. In Boardwalk Apartments, by contrast, we were interpreting the substantive law of Kansas. 572 F.3d at 516–17. Second, and more fundamentally, the issues in the two cases are different. Here, it is Buddy Bean's actual cash value claim that is in dispute. In Boardwalk Apartments, however, it was the insured's replacement cost claim that was contested. See id.

After full consideration we agree with Buddy Bean's reading of the policy and conclude that the proper interpretation of the coinsurance provision depends on whether the insured has filed an actual cash value claim or a replacement cost claim. Here, Buddy Bean filed a claim with Axis for the actual cash value of its stolen wire. In order to calculate whether Buddy Bean is subject to a coinsurance penalty on that claim, then, the term "value" in the coinsurance provision should be read as the actual cash value of Buddy Bean's saw and planing mills. Under Arkansas law, "[c]ontracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose." Parker v. S. Farm Bureau Cas. Ins. Co., 292 S.W.3d 311, 315 (Ark. Ct.

App. 2009). We are persuaded that this interpretation gives effect to the general object of the policy and the parties' intent.

Reading the coinsurance provision this way makes sense of the "whole policy," as Arkansas law directs. Didier, 783 S.W.2d at 32. Buddy Bean's choice to purchase a type of expanded coverage was not intended to vitiate its basic coverage. Instead, as the Replacement Cost section G.3.c of the policy explains, optional replacement cost coverage provides Buddy Bean the ability to file claims "on an actual cash value basis" in addition to claims "on a replacement cost basis." Interpreting the coinsurance provision as Axis urges would strip the word "basis" in section G.3.c of any meaning. If Buddy Bean's decision to buy replacement cost coverage would automatically change how to calculate the coinsurance provision, the insured would always suffer a substantial coinsurance penalty even on actual cash value claims, rendering section G.3.c irrelevant. Such an interpretation would be at odds with Arkansas law, which directs us to "give effect to all provisions" of the policy so that "all of its parts harmonize." Davidson, 463 S.W.2d at 655.

Our interpretation is also consistent with our prior Boardwalk Apartments decision and the Wenrich case it followed. Neither case addressed how to interpret this insurance policy with respect to an actual cash value claim because only replacement cost claims were at issue. Boardwalk Apartments, 572 F.3d at 516–17; Wenrich, 132 P.3d at 975–76. Our conclusion here is that the coinsurance provision should be calculated depending on the type of claim filed, which is wholly consistent with the conclusions of those courts. Our reading is also supported by other cases in which insurance providers have conceded that this coinsurance provision should be calculated using the property's actual cash value when the insured "elected actual cash value as the basis for their claim." E.g., Kielbania v. Indian Harbor Ins. Co., No. 1:11CV663, 2012 WL 3957926, at *7 n.6 (M.D.N.C. Sept. 10, 2012), adopted, 2012 WL 6554081 (M.D.N.C. Dec. 14, 2012). Buddy Bean's claim here is for the actual

cash value of the stolen wire, and the coinsurance provision should be calculated using the actual cash value of the saw and planing mills.

All of the relevant property values are undisputed at this point. Based on the foregoing discussion, we conclude that Buddy Bean is not subject to a coinsurance penalty on its claim for the actual cash value of the stolen wire. Buddy Bean is entitled to receive its claim of $725,000 less the $100,000 interim payment made by Axis and two undisputed $25,000 deductibles. Buddy Bean is thus entitled to a judgment in the amount of $575,000.

## III.

Accordingly, we reverse and remand for entry of judgment in favor of Buddy Bean Lumber Company.

_____