KENNETH S. HIXSON, Judge
Appellant Miracle Kids Success Academy, Inc. (Miracle Kids) appeals from an order granting summary judgment to appellee Marvin Maurras (M. Maurras) on M. Maurras's claim for repayment of a loan. This is the second time this case has been before this court. We dismissed the first appeal for lack of a final judgment because two additional claims by M. Maurras had been dismissed without prejudice, leaving him free to refile those unresolved claims. See Miracle Kids Success Academy, Inc. v. Maurras , 2016 Ark. App. 445, 503 S.W.3d 94. After our dismissal, the trial court entered an order granting summary judgment to M. Maurras on his claim for repayment of the loan, dismissing M. Maurras's remaining two claims with prejudice, and awarding M. Maurras $19,200 in attorney's fees. Miracle Kids timely appealed from that order, and in this appeal, it contests both the summary judgment and the attorney's fees. Because the order being appealed is now a final order, we have jurisdiction to hear this appeal.
When a term of a contract is open to different reasonable interpretations, there is a fact question to be resolved, and the case is not ripe for summary judgment. See Prochazka v. Bee-Three Dev., LLC , 2015 Ark. App. 384, 466 S.W.3d 448. Such is the case in the present litigation. We conclude that the trial court erred in granting summary judgment for M. Maurras in this case because the contract between the parties was ambiguous as to an essential disputed term. Therefore, we reverse the summary judgment, reverse the *605 award of attorney's fees, and remand for trial.
Our standard of review for summary-judgment cases is well established. Anderson v. CitiMortgage, Inc. , 2014 Ark. App. 683, 450 S.W.3d 251. Summary judgment should be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. Thomas v. Clear Investigative Advantage, LLC , 2017 Ark. App. 547, 531 S.W.3d 458. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. Graham v. Underwood , 2017 Ark. App. 498, 532 S.W.3d 88. In reviewing a grant of a summary judgment, the appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party left a material question of fact unanswered. Thomas , supra. We view the evidence in the light most favorable to the party against whom the motion for summary judgment was filed and resolve all doubts and inferences against the moving party. Id.
Mary Katherine Hardin (Hardin) and Shelly Decker Keller (Keller) created Miracle Kids, in 2008 and were seeking investors. They successfully solicited Marvin Maurras and his nephew, Chris Maurras (C. Maurras), to join them as the two remaining shareholders and directors of Miracle Kids. The shareholders ultimately agreed that each shareholder would contribute $175,000 as start-up capital for the company for a total of $700,000, and this agreement was reduced to writing in an Operations Agreement dated and executed on September 23, 2009.
About three months later on December 11, 2009, a shareholders' meeting was held. Between September 23, 2009, the date the Operations Agreement was executed, and December 11, 2009, the date of the shareholders' meeting, some or all of the shareholders apparently met with an accountant who suggested a significant change in the manner in which the start-up contributions would or should be made. Instead of each shareholder's $175,000 contribution being made in the form of a capital contribution, the accountant suggested that each shareholder contribute $25,000 as start-up capital and the remaining $150,000 contribution be made in the form of individual $150,000 promissory notes. The minutes from that December 11, 2009 meeting reflected this revision of the initial funding provisions in the Operations Agreement,[1] as follows:
Based on suggestion of accountant all agree that funding of the company shall take place as loans to the company, excluding the initial $25,000 by each partner which will be a capital contribution. The remaining $150,000 of required funding by each partner as stated in the Operating Agreement will be held as a liability of the company which will be repaid to each partner. The loans will accrue interest at an annual interest of 5%. [Hardin] and [Keller] will be repaid their principal only at a rate of $5000 monthly and [M. Maurras] and [C. Maurras] agree to defer loan repayment for now. This will replace the descriptions as detailed in the Operating Agreement.
(Emphasis added.) The December 11, 2009 minutes were signed by all four shareholders.[2]
*606 The record reflected that Hardin and Keller borrowed money from a bank to fund their respective $175,000 contributions and that Hardin and Keller were allowed to pledge assets of the company to the bank to secure the loans. M. Maurras made his initial $25,000 start-up capital contribution and then funded his $150,000 loan by making six installments of $25,000 each with the last installment made in May 2010.[3]
The company apparently operated profitably through the summer of 2014. In June 2014, M. Maurras demanded repayment of his loan, and Miracle Kids refused to pay. On July 17, 2014, M. Maurras filed a complaint against Miracle Kids. In Count I, M. Maurras demanded repayment of the loan in the principle sum of $150,000 plus 5% interest as reflected in the minutes of the December 11, 2009 shareholder meeting. M. Maurras also requested attorney's fees pursuant to Arkansas Code Annotated section 16-22-308 (Repl. 1999).[4] Miracle Kids filed a timely answer to the complaint.
M. Maurras subsequently filed a motion for partial summary judgment on his claim for repayment of the loan.[5] In his summary-judgment motion, M. Maurras asserted that because there was no maturity date for the loan, it was payable in full on demand. As support for the proposition that the loan was "due on demand," M. Maurras cited Arkansas Code Annotated section 4-3-108(a) (Repl. 2001), which provides in pertinent part: "(a) A promise or order is 'payable on demand' if it ... (ii) does not state any time of payment."
Miracle Kids filed a response to M. Maurras's motion for partial summary judgment. In its response, Miracle Kids asserted that the December 11, 2009 minutes were not intended to constitute a loan instrument or other type of instrument to be used for the purpose of demanding payment from Miracle Kids. Miracle Kids also asserted that it was financially unable to repay the shareholder loan and that any repayment of the loan would require shareholder approval as required by the parties' Operations Agreement. Further, Miracle Kids specifically contended that M. Maurras had incorrectly applied Arkansas Code Annotated § 4-3-108(a) in that the minutes of the shareholders' meeting did not constitute an "order," a "promise," or a "negotiable instrument" under Arkansas Code Annotated sections 4-3-103(a)(7) and (11) and section 4-3-104.
Attached to Miracle Kids' response was the affidavit of shareholder C. Maurras, the nephew of M. Maurras, wherein C. Maurras stated:
6. As reflected in the December 11, 2009 minutes from the shareholder meeting (the "Minutes"), based on advice from Miracle Kids' accountant, $150,000 of the $175,000 capital contribution that Marvin Maurras and I each agreed to make to Miracle Kids would be treated as loans to Miracle Kids and we agreed to defer repayment of the *607 loans to a future date. Our agreement was that the loans would be paid at a later date to be determined by a majority of the shareholders at such time (if ever) that Miracle Kids could afford to repay the loan (i.e. refund the capital contribution). At the time that the Minutes were signed, no agreement was reached among the shareholders of Miracle Kids as to when the shareholder loans would be repaid.
7. The Minutes are not and were never intended as a promissory note or negotiable instrument, which could be used for the purpose of making a demand for repayment of the shareholder loans from Miracle Kids. I never viewed the Minutes as a promissory note or other evidence of indebtedness that could be presented to Miracle Kids for payment of a debt. It was my understanding that the shareholder loans (which were in reality capital contributions) would be repaid when a majority of the shareholders determined that Miracle Kids could afford to repay the shareholder loans.
8. In the past 18 months, Miracle Kids has opened four (4) new locations, and cash flow is extremely tight. At this time, Miracle Kids does not have sufficient cash flow to repay the shareholder loans to Marvin Maurras or to me.
9. If a shareholder meeting were duly called for the purpose of deciding whether to immediately repay the shareholder loan to Marvin Maurras, I would vote against repaying the loan due to the current financial condition and cash needs for growth of Miracle Kids.
(Emphasis added.) In addition, Miracle Kids attached the affidavit of shareholder Shelly Keller, which was virtually identical in content to C. Maurras's affidavit.[6] Simultaneous with the filing of its response to the M. Maurras motion for partial summary judgment, Miracle Kids also filed a motion requesting that partial summary judgment be entered in its favor with respect to M. Maurras's claim for loan repayment.
The trial court entered an order granting M. Maurras's summary-judgment motion and denying Miracle Kids' summary-judgment motion. After we dismissed the appeal from that order without prejudice due to lack of finality, the trial court entered a final order disposing of all the claims and again granting M. Maurras's motion and denying Miracle Kids' motion. That final order, which was entered by the trial court on December 16, 2016, provides in pertinent part:
The Plaintiff loaned the Defendant the principal sum of $150,000 at Five-Percent (5%) annual interest, as set forth in the shareholders' meeting minutes. The loan did not have a maturity date and was, therefore, payable upon demand.
Based on these conclusions, the trial court entered a judgment to M. Maurras in the amount of $206,298.88 plus postjudgment interest. The order also awarded M. Maurras $19,200 in attorney's fees pursuant to Arkansas Code Annotated section 16-22-308.
On appeal from the summary judgment, Miracle Kids argues that the December 11, 2009 minutes relied on by the trial court did not constitute a negotiable instrument. It also argues that repayment of the loan was conditioned on a majority vote of the shareholders when Miracle Kids could afford to repay it, and that such condition was not met. Finally, Miracle Kids challenges *608 the award of attorney's fees, arguing that because the summary judgment should be reversed, M. Maurras is no longer the prevailing party. Alternatively, Miracle Kids contends that summary judgment was improper because there was a genuine fact dispute on the interpretation of the agreement of the parties.
While Miracle Kids is correct that the minutes do not constitute an order, promise, or negotiable instrument as contemplated by Arkansas Code Annotated sections 4-3-103 et seq, that is not dispositive of the controversy. The language in the minutes of the shareholders' meeting that references the new funding agreement is not a promissory note, a negotiable instrument, or a written contract. The underlying agreement that is the subject of M. Maurras's cause of action is simply an oral agreement to loan a sum certain to the corporation. The record reflects that the four shareholders attended a shareholders' meeting during which each of them discussed and orally agreed to loan money to the corporation. At no time after the conclusion of that shareholders' meeting was the loan agreement reduced to writing.[7] The only evidence of that oral agreement were the affidavits of M. Maurras, C. Maurras, and Shelly Keller and a memorialization of the agreement set forth in the redacted minutes of the shareholders' meeting. An oral agreement to loan money can be enforceable. If the terms of that oral agreement had unambiguously provided that the loan was payable upon demand, or if the oral agreement simply had no additional ambiguous contingency that could be interpreted to place a condition on the repayment, M. Maurras may have been entitled to repayment on demand. However, that is not the case here.
The trial court was called upon to interpret an oral contract. The central issue in this case is whether there was an ambiguity in the parties' oral contract such to defeat M. Maurras's motion for summary judgment. We conclude that there was an ambiguity. One of the critical, material terms of the loan agreement was the date of maturity or date of repayment. The minutes clearly reflect that Mary Hardin and Shelly Keller were to be immediately paid $5,000 monthly. However, those same minutes indicate that M. Maurras and C. Maurras agreed to "defer loan repayment for now. " In the simplest of terms: What does that phrase mean? In the affidavits submitted by Miracle Kids, both C. Maurras and Shelly Keller stated that the repayment of both M. Maurras's and C. Maurras's loans would be deferred to a future date, with the agreement that the loans would not be repaid until a majority of the shareholders determined that Miracle Kids could afford to repay the shareholder loans. In the affidavit submitted by M. Maurras, he provided no explanation for why he deferred repayment, but only claimed that there was no maturity date for the loan. In M. Maurras's affidavit, he did not offer any interpretation of the phrase "defer loan repayment for now. "
In support of its argument that the trial court erroneously entered summary judgment for M. Maurras, Miracle Kids relies on Thomas v. American Radio & Television, Inc. , 228 Ark. 1050, 312 S.W.2d 183 (1958). In that case, a resolution of the board of directors provided that a certain salary would be paid to an employee and director of the corporation, "payable to him when the company is in a position to do so, the time to be decided at a later date."
*609 Thomas , 228 Ark. at 1051, 312 S.W.2d at 184. Demand was subsequently made for payment of the employee's salary accrual, and the supreme court affirmed the trial court's finding that no money was due based on the above provision. The supreme court in Thomas stated that a promise to pay when the promisor is able is only a conditional promise to pay, and the promisee is not entitled to recover on such a promise unless the promisor is able to pay the debt.
When a contract is unambiguous, its construction is a question of law for the court. Fryer v. Boyett , 64 Ark. App. 7, 978 S.W.2d 304 (1998). A contract is unambiguous when the terms are not susceptible to more than one equally reasonable construction. Id. When, however, there is a dispute as to the meaning of a term in a contract, the trial court must initially perform the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties rely on disputed extrinsic evidence to support their proposed interpretation. Elam v. First Unum Life Ins. Co. , 346 Ark. 291, 57 S.W.3d 165 (2001). The construction and legal effect of written contracts are matters to be determined by the court, not the jury, except when the meaning of the language depends on disputed extrinsic evidence. Id. Thus, where the issue of ambiguity may be resolved by viewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law. Id. On the other hand, where the parties go beyond the contract and submit disputed extrinsic evidence to support their proffered definitions of the term, this is a question of fact for the jury. Id. In the latter situation, summary judgment is not proper. Id. Our supreme court has also held that when there is any doubt about the meaning of language in a written instrument, there is an issue of fact to be litigated, and summary judgment is particularly inappropriate in that instance. Carver v. Allstate Ins. Co. , 77 Ark. App. 296, 76 S.W.3d 901 (2002).
In the case at bar, a material term of the parties' loan agreement, i.e., the terms of repayment, was ambiguous. This created a fact question as to when, and on what condition, repayment was due.
If a trier of fact credited C. Maurrus and Shelly Keller's interpretation of the agreement, we would have the same situation as in Thomas , supra , where the supreme court held that a promise to pay when the promisor is able is a conditional promise to pay, and the promisee is not entitled to recover on such a promise unless the promisor is able to pay the debt. If a trier of fact credited the interpretation of M. Maurras, then the oral loan agreement could be "due on demand." The court in this case had to interpret an oral contract and an ambiguous term of an oral contract by using the extrinsic evidence, which included the minutes of the shareholder meeting and the three affidavits submitted to the court. That is improper on summary judgment. The only way to justify summary judgment would be to find that reasonable minds could not differ as a matter of law as to the repayment terms of the loan agreement. However, there are at least two reasonable interpretations of that material term: (1) M. Maurras's proposed interpretation that the loan was simply a demand note; or (2) Miracle Kids' interpretation that the parties agreed that the loan was payable only if the company could afford it, and then, only upon a vote of the shareholders. Each are reasonable interpretations, and the disposition of the matter required the court to review the content of the four conflicting pieces of extrinsic evidence and resolve the conflicts therein. This was inappropriate for summary judgment. We hold that the *610 trial court erred in granting M. Maurras's summary-judgment motion, and we reverse and remand for trial. Because the attorney's fees against Miracle Kids were awarded based on the trial court's erroneous conclusion that M. Maurras prevailed as a matter of law, we reverse the attorney's fees as well.
Reversed and remanded.
Gruber, C.J., and Virden and Harrison, JJ., agree.
Gladwin and Glover, JJ., dissent.

The actual minutes contained in the record have been substantially redacted. The parties redacted all of the minutes except the portion of the minutes pertaining to the "loans."

While the parties interchangeably use the terms shareholders, members, partners, etc., in describing their respective positions, it is clear from the record that Miracle Kids Success Academy, Inc., is an Arkansas corporation, and each party participated as a shareholder in the corporation.

The record is either unclear about or void of the manner in which C. Maurras made his $175,000 contribution and it is not relevant to this appeal.

The complaint also alleged in Count II that the corporation failed to provide him with timely Schedule K-1s and in Count III that the corporation performed certain corporate acts without prior notice. Neither of these claims are pertinent to this appeal.

This motion did not pertain to two other claims raised by M. Maurras in his complaint, but as stated previously those two claims have since been dismissed with prejudice and have no relevance to this appeal.

The fourth original shareholder, Mary Hardin, was no longer a shareholder of the corporation at the time the dispute arose.

None of the parties raise the statute of frauds as an issue herein and, accordingly, we will not address it.